IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANTHONY TERRELL RAY FERGUSON, <br> Petitioner, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br> Respondent. | ORDER AND <br> MEMORANDUM DECISION <br><br><br> Case No. 2:12-CV-1197-TC |

Petitioner Anthony Terrell Ray Ferguson pled guilty to conspiracy to distribute methylenedioxymethamphetamine (MDMA) in violation of 21 U.S.C. § 846. The court sentenced Mr. Ferguson to 180 months in custody. After the Tenth Circuit affirmed Mr. Ferguson's sentence, Mr. Ferguson filed this petition under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence.

Mr. Ferguson, proceeding *pro se*, asserts three arguments in support of his contention that he received ineffective assistance of counsel. His first argument is that his attorney failed to present to the court lab reports of the drugs in question. The second argument is that his attorney gave wrong advice on which count to plead guilty to. Mr. Ferguson's third argument is that his attorney gave wrong advice about his career offender status.

The court recognizes that *pro se* litigants' pleadings should be construed more liberally than if a licensed attorney had drafted them. Haines v. Kerner, 404 U.S. 519, 520 (1972); Whitney

v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997). Applying this more lenient standard, the court has carefully considered the relevant pleadings and the entire record and concludes that Mr. Ferguson has failed to meet his burden of establishing that his counsel was ineffective. Accordingly, the court DENIES Mr. Ferguson's petition.

BACKGROUND

At the end of 2008, a traffic stop in Nevada yielded a large amount of MDMA (commonly known as "ecstasy"). The passenger in the car told officers that the driver was a partner with Mr. Ferguson in a MDMA-trafficking scheme between California and Utah. Based on this information, the Drug Enforcement Administration (DEA) began investigating Mr. Ferguson's drug distribution activity. The DEA made controlled purchases of MDMA and N-benzylpiperazine (BZP) from Mr. Ferguson and separately arrested two suspects who indicated that Mr. Ferguson was the head of a distribution ring bringing MDMA to Salt Lake City.

Several of Mr. Ferguson's co-conspirators testified before the grand jury for the District of Utah and returned a three-count indictment. Mr. Ferguson was charged with conspiracy to distribute MDMA in violation of 21 U.S.C. § 846 (Count 1); distribution of BZP in violation of 21 U.S.C. § 841(a)(1) (Count 2); and distribution of MDMA in violation of 21 U.S.C. § 841(a)(1) (Count 3).

Attorney Jonathan Grimes defended Mr. Ferguson. On April 26, 2010, Mr. Ferguson pled guilty to Count 1 of the indictment in exchange for the government's motion to dismiss the remaining counts, recommendation of a sentence reduction based on full acceptance of responsibility, and recommendation of a sentence at the bottom end of the U.S. Sentencing Guidelines range.

Before sentencing, the court held an evidentiary hearing, on December 8, 2010, to determine the amount of drugs Mr. Ferguson conspired to distribute.[1] The court determined that he conspired to distribute between 110,000 to 120,000 pills of MDMA and BZP. No federal sentencing guideline existed for BZP at the time, so the court applied the MDMA sentencing guideline. The court determined that Mr. Ferguson had an offense level of 37[2] with a criminal history category of VI, which resulted in an advisory sentencing range of 360 months to life under the Guidelines. The statutory maximum for Mr. Ferguson's offense was 240 months. The court ultimately sentenced Mr. Ferguson to 180 months.

Mr. Ferguson appealed his sentence, arguing that (1) the court's calculation of the total number of pills was unreliable; (2) the court erred in using the presumptive amount of 250 mg of MDMA per tablet; (3) the court erred in applying the MDMA to marijuana conversion ratio of 1:500; and (4) the court miscalculated his criminal history category. The Tenth Circuit affirmed Mr. Ferguson's sentence on January 6, 2012.

ANALYSIS

To demonstrate ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The standard applies to sentencing proceedings and plea hearings as well as at trial. See

---

[1] The amount of MDMA would affect the length of Mr. Ferguson's sentence.

[2] The court initially found that Mr. Ferguson's offense level was 40, but 3 points were deducted as a result of Mr. Ferguson's acceptance of responsibility.

United States v. Glover, 97 F.3d 1345, 1349 (10th Cir. 1996). There is a strong presumption that counsel provided effective assistance, and a § 2255 petitioner has the burden of proof to overcome that presumption. James, 211 F.3d at 555.

To prove that counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Additionally, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Id. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

To establish prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. But "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697.

## I. Lab Reports

Mr. Ferguson argues that his counsel provided ineffective assistance when he failed to present to the court the lab reports that showed the recovered pills contained BZP rather than MDMA. Mr. Ferguson also contends that had his attorney presented these lab reports to the

4

court, Mr. Ferguson would have received a dramatically reduced sentence.

The evidence of the drug type of the pills in questions was already provided to the court at the time of sentencing. In the Government's Supplemental Sentencing Memorandum, the Government admitted that the drugs recovered from Mr. Ferguson were BZP. (Dkt. No. 57 at 2, 47). Accordingly, the record does not reflect and Mr. Ferguson fails to demonstrate that he was prejudiced by the failure of his counsel to present lab reports showing that the pills contained BZP rather than MDMA. Because the court finds no prejudice, there is no need to evaluate Mr. Grimes' performance.

## II.     Guilty Plea

Mr. Ferguson argues that his counsel provided ineffective assistance when he advised Mr. Ferguson to plead guilty to count one of the indictment and not another count. Mr. Ferguson contends that had his attorney informed him that the pills were BZP, Mr. Ferguson would not have pled guilty to Count one. Mr. Ferguson further contends that if he would have plead guilty to the BZP count rather than the MDMA count he would have received a lesser penalty.

At the time of Mr. Ferguson's offense and sentencing, the guidelines did not mention BZP and no conversion ratio existed for that drug. The guidelines, under U.S.S.G. § 1B1.2, instructed courts to "use the most analogous guideline" when no specific guideline corresponded to a particular statutory offense.[3] Distributors often sell BZP as MDMA (ecstacy) and Mr. Ferguson had represented to his customers that the pills he supplied were MDMA, so the most

---

[3] The Sentencing Guidelines Commission included BZP in the guidelines in 2012 and established a conversion ratio to marijuana of 1:100, but the Commission did not make the new guidelines retroactive.

5

analogous guideline was the MDMA guideline. The Drug Equivalency Table of the United States Sentencing Guidelines (U.S.S.G.), § 2D1.1, specified a conversion ratio of 1 gram of MDMA to 500 grams of marijuana. The court's use of the MDMA guideline for sentencing would not have changed even if Mr. Ferguson plead guilty to a different count in the indictment. Because of this, Mr. Ferguson fails to demonstrate that he was prejudiced by the advise of his counsel and the court need not evaluate Mr. Grimes' performance.

## II.     Career Offender Status

Mr. Ferguson alleges that he told Mr. Grimes that he did not want to plead guilty if he would be classified as a career offender and that Mr. Grimes reassured Mr. Ferguson that he would not be sentenced as a career offender. Mr. Ferguson argues that Mr. Grimes was ineffective by providing the wrong advice to Mr. Ferguson as to the career offender status that was ultimately included in the Pre-Sentence Report and that prejudice should be presumed.

But, after a review of the record, the court finds that Mr. Ferguson was not prejudiced. Because Mr. Ferguson had two prior felony convictions for robbery, the court determined that Mr. Ferguson was a career offender.[4] The Guidelines produce an initial base offense level of 32 and a criminal history category of VI when the offense carries a statutory maximum of 20 years.[5] Because Mr. Ferguson accepted responsibility for the offense, the career offender guideline produced an adjusted base offense level of 29.[6] Yet, Mr. Ferguson fell within Criminal History

---

[4] PSR at ¶ 54; U.S.S.G. § 4B1.1.

[5] U.S.S.G. § 4B1.1.

[6] U.S.S.G. § 3E1.1.

Category VI regardless of his career offender status[7] and had no impact on his sentencing range. because the drug distribution guideline dictated an initial base offense level of 40.[8] On appeal to the Tenth Circuit, Mr. Ferguson challenged the court's determination that he fell within Criminal History Category VI under the guidelines. The Circuit Court found no error in the court's determination of Mr. Ferguson's criminal history category. United States v. Ferguson, No. 11-4004, 10 (10th Cir. Jan. 6, 2012); (Dkt. No. 85).

Mr. Grimes' advice to Mr. Ferguson regarding his career offender status would have made no difference, so Mr. Ferguson did not suffer prejudice from his attorney's advice. In fact, Mr. Ferguson was granted a downward departure of five years by the court because of the advocacy of Mr. Grimes. (Tr. of Sentencing, Dkt. No. 79 at 10, 29.) Because Mr. Ferguson was not prejudiced, the court need not evaluate whether Mr. Grimes' performance was deficient.

## CONCLUSION

Accordingly, the court DENIES Mr. Ferguson's Motion to Vacate (Dkt. No. 1).

DATED this 15th day of July, 2014.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[7] PSR at ¶ 53.

[8] PSR at ¶ 39.